**SO ORDERED.**

**SIGNED this 05 day of May, 2011.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN RICHARD HUNTER and | ) | Case No. 09-12270 |
| REBEKAH JEAN WOLKEN, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| IN RE: | ) | |
| | ) | |
| JOSHUA JOHN ANDERSON and | ) | Case No. 09-13889 |
| HEATHER DIANE REECE, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| IN RE: | ) | |
| | ) | |
| KELLY RAY TATUM and | ) | Case No. 09-13109 |
| CANDACE SUE TATUM, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

1

**MEMORANDUM OPINION**

In each of these cases, the debtors assigned the pre-petition portion of their year-of-filing income tax refunds to their attorney as a flat-fee retainer for his services in preparing and filing their chapter 7 bankruptcy cases. The chapter 7 Trustees move for orders to turnover the entirety of the pre-petition portion of the refunds, thereby forcing debtors' counsel to collect his fees from their post-petition shares.[1] The parties submitted these cases on stipulated facts and briefs. Having carefully reviewed the parties' papers and the law, the Court concludes that the debtors' flat-fee assignments of income tax refunds are enforceable and that the attorney's fee may be deducted from the estate's share of the entirety of the refund.[2]

Factual Background

    A.    Hunter/Wolken[3]

Co-debtors Steven Hunter and Rebekah Wolken filed their chapter 7 bankruptcy petition on July 17, 2009 and J. Michael Morris was appointed to serve as trustee of their chapter 7 bankruptcy estate. Hunter and Woken agreed to pay a flat fee of $1,000.00 for representation in their case. Before they filed, they paid Russell W. Davisson the sum of $500.00 for the filing fee and attorney fees and executed an assignment in favor of Davisson of their federal and state income tax refunds for the tax year of 2009. This assignment (which is identical to those filed by the other two sets of debtors named in the caption) was filed with the petition in this matter. The terms of this assignment

---

[1] All of the debtors appear by Russell Davisson. Trustee Linda S. Parks appears pro per. Trustee J. Michael Morris appears by Eric Lomas.

[2] The Court has jurisdiction of these contested matters. 28 U.S.C. § 1334. This adversary proceeding is a core proceeding. 28 U.S.C. § 157 (b)(2)(E).

[3] *See* Dkt. 47 for stipulations of fact.

2

and in the other cases considered today read as set out below.

The unpaid balance of attorney's fees in the Hunter/Wolken case is $799.00. Debtor Steven R. Hunter received federal and state tax refunds for the tax year 2009 in the amount of $978.00.[4] These debtors filed their case on the 199th day of 2009, meaning that their refunds should be allocated 198/365 to their estate and the balance representing the remaining portion of 2009 allocated to them.

      B.      Tatum[5]

Co-debtors Kelly and Candace Tatum filed their chapter 7 bankruptcy petition on September 23, 2009 and Linda S. Parks was appointed to serve as trustee of their chapter 7 bankruptcy estate. The Tatums agreed to pay a flat fee of $1,000.00 for representation in their case. Before they filed, they paid Russell W. Davisson the sum of $301.00 for attorney fees and executed an assignment in favor of Davisson of their federal and state income tax refunds for the tax year of 2009. This assignment was filed with the petition in this matter.

The unpaid balance of attorney's fees in the Tatum case is $699.00. The Tatums received federal and state tax refunds for the tax year 2009 in the amount of $8,412. These debtors filed their case on the 266th day of 2009, meaning that their refunds should be allocated 266/365 to their estate and the balance representing the remaining portion of 2009 allocated to them.

      C.      Anderson/Reece[6]

Co-debtors Joshua Anderson and Heather Reece filed their chapter 7 bankruptcy petition on

---

[4] In a separate matter, this Court has ordered Ms. Wolken to turnover portions of her 2009 federal and state tax refunds as well.

[5] *See* Dkt. 28 for stipulations of fact.

[6] *See* Dkt. 51 for stipulations of fact.

November 23, 2009 and Mr. Morris was appointed to serve as trustee of their chapter 7 bankruptcy estate. Anderson and Reece agreed to pay a flat fee of $1,000.00 for representation in their case. Before they filed, they paid Russell W. Davisson the sum of $800.00 for the filing fee and attorney fees and executed an assignment in favor of Davisson of their federal and state income tax refunds for the tax year of 2009. It was filed with the petition in this matter.

The unpaid balance of attorney's fees in the Anderson/Reece case is $499.00. These debtors received federal and state tax refunds for the tax year 2009 in the amount of $7,778. These debtors filed their case on the 327th day of 2009, meaning that their refunds should be allocated 327/365 to their estate and the balance representing the remaining portion of 2009 allocated to them.

### D. The Assignment

Each of these debtors executed an assignment prepetition that provides as follows:

> Now on this [ ] day of [    ], 2009, I/we, the undersigned debtor, hereby assigns to my attorney, Russell W. Davisson, my federal and state income tax refunds for the tax year 2009, and any prior years, *in an amount equal to the unpaid balance of my attorney fees* in connection with preparation and filing of this Petition for Relief pursuant to the United States Bankruptcy Code, but *only to the extent such funds are accrued as of the date of the filing* of the Petition for Relief in this matter *and thereby includable in the bankruptcy estate.*[7]

### Analysis

The Trustees' turnover motions are predicated on a series of arguments that support their underlying position that the only portion of a debtor's tax refund that may be tapped for pre-petition bankruptcy attorneys' fees is that which is allocable to the time period after the petition date. First, they claim that the terms of the assignment render it either ineffective or subject to avoidance under § 544(a) because the debtor may not assign what is an essentially undivided and unliquidated

---

[7] *Hunter*, Case 09-12270, Dkt. 6 (emphasis added).

4

expectant interest based upon a notional "accrual" date.  Second, they consider that the debtors are required to marshal away from that part of the refund to which the estate is entitled.  Third, they argue that allowing the debtor to assign away this valuable asset "burdens" the creditors by effectively forcing them to pay the debtor's attorneys' fees and that this burdensome effect renders the assignments fraudulent transfers done for the purpose of hindering or delaying the debtors' creditors.

The debtors respond that an assignment of pre-petition tax refunds for payment of a flat fee is no different than a debtor paying an attorney a flat fee in cash; the result in either event is that the payment does not become property of the estate.

    A. <u>Flat Fees and the Case Law</u>.

Before addressing the merits of these motions, a review of statutory and case law limiting the ways a chapter 7 debtor's lawyer can be paid is in order.  Chapter 7 debtors' attorneys have no statutory right to collect their fees for work in connection with the filing of the chapter 7 case from the chapter 7 estate.  Starting with the Code, § 330(a)(1) allows the Court to award a professional person employed under § 327 reasonable attorney's fees and expenses, but the express authority granted in § 330(a)(4)(B) to allow reasonable fees to an attorney representing a debtor for services "in connection with the bankruptcy case" is limited to chapter 12 or 13 debtors' attorneys.  In *Lamie v. United States Trustee*, the Supreme Court held that the omission of chapter 7 debtors' attorneys from this section of the Code meant that chapter 7 debtors' attorneys may not be compensated for post-petition services from property of the estate unless the Court has authorized their employment.[8]  However, the Supreme Court recognized that it is "common practice" for chapter 7 debtors' counsel

---

[8] 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed. 2d 1024 (2004).

5

to take a retainer to cover the "standard fee" for services incident to filing a case and commented –

> Section 330(a)(1) does not prevent a debtor from engaging counsel before a Chapter 7 conversion and paying reasonable compensation in advance to ensure that the filing is in order. Indeed, the Code anticipates these arrangements. See, *e.g.,* § 329 (debtors' attorneys must disclose fees they receive from a debtor in the year prior to its bankruptcy filing and courts may order excessive payments returned to the estate).[9]

After *Lamie* was decided, the Tenth Circuit considered the case of a debtor who paid a security retainer and also assigned an anticipated $50,000 tax refund to secure payment of his attorney's fees for services to be rendered pre- and post-petition.[10] The Circuit adopted the opinion of the Bankruptcy Appellate Panel (BAP) which concluded that § 330(a)(1) does not prevent payment in advance of reasonable compensation in connection with filing a case, but also that payment from the estate for those services cannot be made without the attorney being employed under § 327. *Wagers* laid particular emphasis on the distinction between a flat-fee retainer which is deemed earned when it is paid and a security retainer in which the client retains an interest in the funds until the attorney earns them. It is the client's retained interest in the funds that becomes property of the estate under § 541. Because the *Wagers* retainer was a security retainer, the trustee in that case was entitled to recover it as property of the estate and the debtors' counsel received nothing in respect of his post-petition efforts.

More pertinent to the motions before me today is *In re Carson*, wherein the Tenth Circuit BAP affirmed Judge Berger's refusal to force the debtor's attorney to enforce a flat-fee income tax refund assignment against only that portion of the debtor's filing year refund attributable to the post-

---

[9] *Id.* at 537-538.

[10] *Redmond v. Lentz & Clark P.A. (In re Wagers)*, 514 F.3d 1021 (10th Cir. 2007).

6

petition period.[11]  The BAP concluded that the assignment of a tax refund for payment of a flat-fee fell within *Lamie*'s so-called "flat-fee exception."  The BAP agreed that the allocation of filing-year tax refunds between the pre- and post-petition periods did not create the "two funds" necessary to invoke the equitable doctrine of marshaling and affirmed the bankruptcy court's decision that the assigned flat-fee would be deducted from the entire tax refund before the allocation between the estate and the debtor was made, recognizing that the refund became the attorney's property ab initio, at least to the extent of the agreed flat-fee.

Thus, in the Tenth Circuit, a flat-fee retainer assigned for work done incident to filing a chapter 7 does not become property of the estate.  The assignment of an anticipated tax refund as part of or all of a flat-fee retainer is enforceable against the estate, at least to the extent of the amount of the flat fee.  Finally, the BAP has approved the deduction of the flat-fee being made prior to the allocation of the refund between the debtor and the estate.  Against this statutory and case law framework, we turn to the Trustees' claims.

        B.      The Validity of the Assignment.

The assignments executed by the debtors and quoted above differ from those considered in *Carson* in a key way:  while each debtor assigned their prior years' refunds subject to the limitation that the amount be limited to the balance of their attorneys fees, the present assignments include the second and more controversial limitation that the fees only be taken from that portion of the refund that reflects the pre-petition period.

Attacking the validity of the assignments as being unconscionable and uncertain as to their scope, the trustees point first to Kansas case law that prohibits the enforcement of unconscionable

---

[11]  *Redmond v. Carson (In re Carson)*, 374 B.R. 247 (10th Cir. BAP 2007).

7

or fraudulently obtained assignments in equity. *Clendening v. Wyatt* is a case about the enforcement of an assignment in the form of a quitclaim deed of John Clendening's expectant interest in his mother's estate.[12] Clendening's wife signed the quitclaim deed as well. When Mrs. Clendening died, her heirs (including John) challenged the validity of the assignment on the basis that an "assignment at law" will not be sustained unless the subject matter is in actual or potential existence. The Kansas Supreme Court held that courts of equity uphold agreements by heirs-apparent to assign their expectancies and that so long as no unjust advantage is taken and if the agreement is not unconscionable or is fraudulently obtained, it will be enforced after the expectancy has ripened.[13] Absent any such evidence in the record, the court enforced the Clendenings' assignment. Applying that rule here, there is nothing in the stipulations to lead the Court to conclude that the assignments were obtained by fraud or are unconscionable per se. Rather, they purport to assign an expectant interest in a proportion to be determined at a later time. This does not run afoul of the rule in *Clendening* or its successors.

The Trustees also challenge the assignments as being "uncertain." They claim that only assignments that make over to the assignee "certain property" are enforceable and that this assignment fails to do that because the pre-petition portion of the tax refund is unascertainable as of the date of the assignment and indeed cannot be determined until the petition date occurs, the tax year ends, and the debtors file their returns. Kansas law holds that "any sort of right or interest in property, whether vested or contingent, may be the subject of barter and sale. [citation omitted] An

---

[12] 54 Kan. 523, 38 P. 792 (1895).

[13] *Id.* at 525.

8

expectancy is ordinarily assignable [citation omitted]."[14] While there are cases where the proration of refunds based merely on the number of days pre- and post-petition may not accurately reflect a fair division of the refund,[15] trustees routinely ask the Court to determine the value of the estate's interest in the debtor's tax refund by proposing it be split based on a proration of the days before and after the filing. There is nothing "uncertain" about that – indeed, Tenth Circuit case law makes it clear that portions of a debtor's tax refund that are not attributable to the pre-petition period are not part of the estate's property.[16] The assignment is not invalid for "uncertainty."

Nor is there anything unconscionable about a debtor assigning a pre-petition property interest to her attorney to pay a flat fee. The Court sees no qualitative difference between this process and a cash retainer. In either scenario, the debtor calls upon assets that would otherwise enter the estate to pay for her pre-petition legal services and that necessarily depletes assets that would otherwise be payable to creditors. That is not a sufficient basis to deem this assignment invalid as being unconscionable.

### C. Imposing the Equitable Doctrine of Marshaling

Because the assignment is limited to assets that would otherwise enter the estate, the trustees argue that this discriminates against the creditors and is inequitable. The equitable doctrine of marshaling is sometimes employed by courts to prevent a senior lienholder from arbitrarily exhausting the only collateral of a junior holder when the senior creditor has other collateral that the

---

[14] *Chatterton v. Clayton*, 150 Kan. 525, 526, 95 P.2d 340 (1939).

[15] *Crowson v. Zubrod, (In re Crowson)*, 431 B.R. 484 (10th Cir. BAP 2010) (in dividing debtors' refunds, court should consider sources of tax over-payment).

[16] *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1518 (10th Cir.1991).

9

junior creditor does not have.[17] For marshaling to apply, the movant must establish three elements: (1) the existence of two or more creditors competing against the same debtor; (2) the existence of two or more funds belonging to the debtor; and (3) the legal right of at least one creditor to satisfy its claim against either of the funds, when the other creditor has access to only one fund.[18] The trustees contend that the debtor should be required to treat the pre- and post-petition portions of the refund as "two funds," and marshal away from the pre-petition fund in which both the creditors and the assignee attorney claim an interest, instead paying the attorneys fee from the post-petition portion that is the debtor's alone. They rely in part on this Court's previous unpublished ruling in *In re Steele*, where a debtor sought to apply a post-petition government setoff for past-due child support to the refund as a whole before the refund proration calculation was made. The Court applied the doctrine of marshaling by analogy to hold that because the child support creditor could have also called upon the post-petition portion of the refund while the Trustee could not, the debtor was required to refund the estate its share of the refund as though there had been no offset.[19]

Subsequent to this Court's order in *Steele*, the BAP has twice visited a situation similar to that before the Court today and has twice rejected the application of the doctrine of marshaling in this setting. In *Carson*, the debtor assigned $750 of her $5,468 federal tax refund to her counsel to

---

[17] *Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963).

[18] *See Morris v. Jack B. Muir Irrevocable Trust (In re Muir)*, 89 B.R. 157, 160 (Bankr.D.Kan.1988).

[19] *Morris v. Steele (In re Steele)*, 2005 Bankr. Lexis 2384 (Bankr. D. Kan. Nov. 17, 2005). The other sitting Kansas bankruptcy judges have rejected the application of marshaling in fact scenarios similar to those at bar. *See In re Blagg*, 372 B.R. 502 (Bankr. D. Kan. 2007) (Somers, J.); *In re Henderson*, 2007 WL 4410222 (Bankr. D. Kan. Dec. 14, 2007) (Karlin, J.); and *In re Miller*, 2006 WL 3627745 (Bankr. D. Kan. Dec. 11, 2006) (Berger, J.), *aff'd* 378 B.R. 418 (Table) (10th Cir. BAP Aug. 16, 2007).

10

Case 09-12270    Doc# 58    Filed 05/05/11    Page 10 of 15

pay his flat fee for filing a chapter 7. This assignment did not purport to direct payment of the fee from the pre- or post-petition portion of the refund. Debtor's counsel deducted the $750 from the pre-petition portion and forwarded the balance to the Trustee. When the Trustee moved for turnover of the $750, claiming that the debtor should pay her fee from the post-petition portion, the bankruptcy court held that the doctrine of marshaling did not apply because the assignment of the refund set over all right and control of it to the lawyer and, therefore, two funds were not created.[20] The BAP agreed that "pro-rating or splitting the refund does not create two funds for purposes of marshaling; instead the pre-petition portion belongs to the estate, while the post-petition portion belongs to the debtor."[21] As such, the crucial second element of the doctrine of marshaling, the existence of two funds, was not shown in *Carson*. Instead, the BAP approved the bankruptcy court's direction that the estate-debtor proration only be made after deduction of the fee from the entire refund, effectively shifting a part of the fee to the post-petition portion of the retainer. The BAP subsequently considered the same issue in *In re Miller* and again affirmed Judge Berger's decision that the doctrine of marshaling did not apply.[22]

As Judge Berger pointed out in his *Carson* order, the facts presented by that case and these cases differ significantly from those in *Steele*.[23] In *Steele*, the debtor benefitted from the setoff because the debt it paid down was non-dischargeable. Plus, the setoff occurred post-petition, meaning that as of the petition date, the effective date for determining the ambit of the property of

---

[20] *In re Carson*, 2006 WL 3716094 (Bankr. D. Kan. Dec. 13, 2006), *aff'd* 374 B.R. 247 (10th Cir. BAP 2007).

[21] 374 B.R. at 250.

[22] 378 B.R. 418 (Table) (10th Cir. BAP Aug. 16, 2007).

[23] *In re Carson,* 2006 WL 3716094 at *3 (Bankr. D. Kan. Dec. 13, 2006).

11

the estate under § 541, the debtor and, therefore, the estate had an expectancy in the entire refund. In these three cases, the debtors assigned some portion of their refunds to the attorney in lieu of paying his flat fee in cash. They had no expectation of ever receiving that portion of the refunds. I therefore concur with my Kansas colleagues and conclude that the assignments set the tax refunds over to counsel pending the determination of the extent of the refunds due to the debtor and the proration between the debtor and the estate. There are not "two funds" and the doctrine of marshaling cannot be applied.

### D. Determining the Propriety of the Fees and the Assignments

As noted above, the Tenth Circuit case law is clear that assigning one's tax refund to pay a flat-fee retainer to a chapter 7 practitioner is within the *Lamie* "flat fee exception" and does not run afoul of *Wagers* because it is intended to compensate the lawyer for work done in connection with filing the case as opposed to work done after the filing that may or may not benefit the creditors or the estate. And, as the Tenth Circuit BAP and the other three bankruptcy judges in this District have held, withholding the flat fee from the entire refund before performing the proration between pre- and post-petition is proper. The assignments in these three cases go a step further by expressly targeting the pre-petition portion of the refund for payment of the fee. This has the effect of shifting the burden of all of the fee to the pre-petition portion when the agreements in *Carson* and *Miller* effectively operate to pro-rate the fee on the same basis as the refund itself. The trustees argue that this renders the assignments fraudulent transfers made to hinder, delay or defraud the creditors.

If this assignment is avoidable as a transfer in fraud of creditors, every pre-petition cash or other asset flat-fee retainer would be as well. Only if these fees were somehow excessive or if the assignments had been done for the purpose of keeping assets out of the estate, would the Court be

12

tempted to conclude that the transfers were fraudulent. Under § 329 and Fed. R. Bankr. P. 2017(a), the Court may examine the substance of a debtor's transactions with counsel and, if the Court finds the compensation paid by the debtor exceeds its "reasonable value," the excess may be ordered repaid to the debtor or, if the funds would have belonged to the estate, to the Trustee.[24]

Nothing in the stipulations supports a conclusion that the $1,000 flat fee charged by counsel in these three cases is excessive. The effect of the assignment of the pre-petition portion of the refunds varies among the three cases with the size of the refunds involved and the lateness in the year when the cases were filed. In *Hunter/Wolken*, the remainder of the fee to be paid is $799 from a refund of $978 plus whatever the trustee can recover from Ms. Wolken. The estate will bear $433.43 more of the $799 fee than it would had the fee been withheld from the whole refund before its proration. In *Tatum*, the estate will bear $509.41 more, and, in *Anderson/Reece*, the estate will bear $447.05 more of the remaining $499 fee.

Even though the arithmetic effect of these debtors segregating the remainder of their fees from the post-petition portions of their refunds varies, the Court cannot conclude that this is so "discriminatory" or extreme that the debtors' assignments should be avoided or that the fees are excessive. The effect is no different than if these debtors had paid the entire $1,000 from cash in their bank accounts or pockets to counsel immediately before the filing of these cases. Each estate is arguably "poorer" by $1,000, but anytime a debtor pays a lawyer a flat fee for services rendered in a chapter 7 case, that which he has paid is no longer available to the debtor's creditors after the case is filed. Assuming the assignment is not taken for some malign purpose not related to paying a flat fee and that the fee is not "excessive" as contemplated by § 329, the Trustees have no basis

---

[24] § 329(b)(1)(A).

13

for demanding its turnover.

Conclusion

Pre-petition paid retainers for flat fees earned in connection with filing a chapter 7 cases have been a part of the bankruptcy world for over 30 years and the Supreme Court expressly approved them in *Lamie*. If chapter 7 lawyers cannot take tax refund assignments to secure their flat-fee retainers, how are they to be paid? The Court considers the benefits to the debtors and to their creditors of having chapter 7 debtors well represented to outweigh the relatively small detriment that these assignments may work on the creditors. The assignments of these debtors' expectancy interests in their tax refunds, limited as they are by the amount of the flat fees owed and by the amount of the refund that would be determined attributable to the estate are valid and enforceable. They do not significantly differ from a cash retainer payment that depletes the debtor's resources before she files a case. So long as the fees are not fraudulent or excessive, there is no basis for the Trustees to recover them.

The trustees' motions for turnover are GRANTED IN PART AND DENIED IN PART as follows:

In *Hunter/Wolken*, debtor Hunter shall turnover to trustee Morris the remainder of the estate's portion of Hunter's tax refund of $530.54 less the attorney's fee of $799, or $0. Ms. Wolken's 2009 tax refund is the subject of an adversary proceeding filed in this case and will be apportioned in accordance with the judgment to be entered therein.[25]

In *Tatum*, the debtors shall turnover to trustee Parks the remainder of the estate's portion of the Tatums' tax refund of $6,130.39 less the attorney's fee of $699, or $5,431.39.

---

[25] *See J. Michael Morris v. Rebekah Wolken,* Adv. No. 11-5044 (Bankr. D. Kan.).

14

In *Anderson/Reece*, the debtors shall turnover to trustee Morris the remainder of the estate's portion of the debtors' refund of $6,968.24 less the attorney's fee of $499, or $6,469.24.

IT IS SO ORDERED.

# # #